# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 25-0224V**

|  |  |
|---|---|
| JENIFER TAYLOR,<br><br>　　　　　　　Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: March 6, 2026 |

*Brynna Gang, Kraus Law Group, LLC, Chicago, IL, for Petitioner.*

*James Connor Daughton, U.S. Department of Justice, Washington, DC, for Respondent.*

## FINDINGS OF FACT[1]

On February 6, 2025, Jenifer Taylor filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine received on October 24, 2022. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Fact Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

The parties were unable to settle the claim (ECF Nos. 13-19). Respondent now asserts that Petitioner has not established that her shoulder pain began within 48 hours of vaccination. Respondent's Rule 4(c) Report at *11-13 (ECF No. 20). For the reasons set forth below, I find that Petitioner's shoulder pain likely began within 48 hours of vaccination.

## I.      Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Human Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

2

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Human Servs*., 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Human Servs*., No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs*., 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Human Servs*., 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## II.    Finding of Fact

I make these findings after a complete review of the record, including all medical records, testimonial evidence, Respondent's Rule 4 report, and additional evidence filed. Specifically, I highlight the following evidence:

- The vaccination record documents that Petitioner received a flu vaccine in her right arm on October 24, 2022. Ex. 8 at 7-8.

- On November 17, 2022, Petitioner saw her primary care provider ("PCP") for a routine follow-up appointment, but did not mention shoulder pain. No musculoskeletal examination was done. Ex. 4 at 18.

- Nearly two months after vaccination, on December 20, 2022, Petitioner was seen in the emergency department for "pain in right upper arm area since she had flu shot on 24th of Oct. 2022." Ex. 6 at 80. The record states that she had returned to the pharmacy where the vaccine was administered and received Benadryl, but that it had not helped. *Id*.

- On January 5, 2023, Petitioner saw an orthopedist for right shoulder pain, explaining she had received a flu vaccine at a pharmacy and "the pharmacist jabbed the needle into her arm and [ever] since then she has had pain." Ex. 1 at 24.

- On January 18, 2023, Petitioner underwent a physical therapy evaluation for adhesive capsulitis. Ex. 6 at 14. She reported that she received a flu vaccine in October and "since then has had pain." *Id*.

- Petitioner filed an affidavit stating that the pharmacist was very busy, and administered the vaccine while leaning over a partially closed "Dutch" door. Ex. 1

3

at ¶ 5. When he put the needle in her arm, "it felt like I got jabbed and the injection immediately hurt, like I was being stabbed." *Id*. She "hollered out and he asked me if he had hurt me, and I told him yes"; he apologized. *Id*. That night, her shoulder was painful and swollen. *Id*. at ¶ 6. About ten days later, her shoulder was not improving so she returned to the pharmacy. The pharmacist thought she was having an allergic reaction, and recommended Benadryl, Tylenol, and ice. *Id*. at ¶ 8. When Petitioner saw her PCP in November 2022, she focused on other health issues that were pressing; at that time, she still expected her shoulder to improve from Tylenol and ice as the pharmacist suggested. *Id*. at ¶ 11.

These medical records and testimonial evidence, reviewed in their totality, establish that more likely than not Petitioner's shoulder pain began within 48 hours of vaccination. Petitioner sought care for her shoulder pain approximately two months after vaccination, stating at that time that her pain had been present since vaccination. Thereafter, she consistently related her pain to vaccination when seeking treatment.

Although Petitioner did not mention her shoulder pain to her PCP at her appointment just over three weeks after vaccination, she has persuasively explained this omission. She notes that at this time, she still expected her shoulder pain to resolve with self-care, and that she had more significant matters to discuss with her PCP. That Petitioner did not report her shoulder pain at this appointment is relevant to damages – suggesting that her pain was not severe enough to merit urgent treatment – but does not defeat a finding of Table-consistent onset.

Petitioner is encouraged to promptly re-engage Respondent in settlement discussions in light of this finding. If these efforts are unsuccessful, briefing will be ordered if warranted.

4

**Scheduling Order**

- **Petitioner shall file, by no later than <u>Monday, April 06, 2026</u>, a status report providing an update on the parties' discussions.**

- **Respondent shall file, by no later than <u>Monday, April 06, 2026</u>, a status report indicating whether he wishes to file an amended Rule 4(c) Report and, if so, proposing a deadline for it.**

    **IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master
